Our next case for argument is 25-1222, Dynapass IP Holdings v. Bank of America. Mr. Williams, please proceed when you're ready. Good morning, Your Honors. Fred Williams for the appellant Dynapass IP Holdings. May it please the court, the district court in this case committed a single fundamental error. It construed the term receiving the password to exclude an alternative embodiment that the patent expressly discloses that the district court itself acknowledged to exist and that Bank of America twice in open court conceded to exist without finding any disclaimer, lexicography, or other probative evidence to overcome the strong presumption against such a construction. We ask the court to vacate and remand, to reverse and remand. The presence of this alternative embodiment is disclosed in column four. In the preferred embodiment, the user concatenates the passcode and token to form a single password. In the second embodiment, the passcode and token are submitted separately. In a third embodiment, the passcode is null and the token alone serves as the password. You'll admit in the second embodiment that you just described there is no reference to the word password. The description of that sentence does not include the word password. That's correct, Your Honor. That whole passage at column four is describing the components of the password, which is generally described as being at least based upon the passcode and the token. Is there any reference in the patent to a password being defined as a passcode and a token received separately? Your Honor, there's no description in the patent of the passcode and token being required to be combined. It does suggest that, yes. So what I'm asking you on the flip side of that, is there anywhere in the patent that it indicates that a password is defined in any way as a passcode and a token arriving separately? That is fundamentally what we're here to talk about, isn't it? I think column four is the answer, Your Honor. The alternative embodiment is the passcode and the token submitted separately. But nowhere does that suggest that that's a password. Well, throughout the patent, I think it suggests it is the password in that paragraph. Actually, wherever you see the phrase, the passcode and a token separately, there is no reference to a password. Am I correct in that? Let me check one thing, Your Honor. Well, in the claim itself, in claim one, generating a new password for said first secure computer network based at least upon the token and a passcode. So in the claim, it references the password being based at least upon those two elements, those two components. The claim talks about generating a password based upon a token and a passcode. Yes, Your Honor. And how would it, if the inputs to the generation act are the token and passcode, how can the output just be the token and passcode again? You see my point? Generating a passcode or another claim that says create a password, those terms, they seem to require bringing something into existence that did not exist before. Taking inputs and producing an output. Your theory of password would just leave us with having inputs, a token and a passcode, and an output of, again, a token and a passcode. So that doesn't seem to fit very well with the common understanding of terms like generating or creating. Well, in this case, Your Honor, the token is generated kind of upon request, right? It did not exist before. The token? Yes. What about the password, though? Well, the password doesn't exist until it's generated. We know it's based at least upon the passcode and the token, and we know that's the same password that the user submits or that's received from the user in the later steps. Are you following my problem, though? I'm not sure I am, Your Honor. Okay. Forgive me, please. Well, what if I said generating a cheese sandwich based on bread and cheese? Okay, fine. If I give you bread and I give you cheese, did I give you a cheese sandwich? Well, I give you Wonder Bread and I give you Kraft cheese slices. Did I give you a cheese sandwich? Well, you might need to combine them when you receive them. That's the generating act, isn't it? And here, the output that you want to focus on as being a password is nothing more than the inputs themselves, the token and the passcode. And there's no doubt that those two things are combined on receipt at the secure computer network. But that's later on. That's not the generating act here. There's nothing in the patent that talks about, except for the preferred embodiment, that describes a simultaneous submission. There's no doubt that in my sent items, when I send the bread and cheese back, they're combined in my sent items. They are combined in what's received by the first secure computer network. And that's consistent with the discussion of the patent. We were talking about the specification earlier, and to me it looked like there were multiple places throughout this patent, starting at column 5, and then over on column 7 again, where multiple times the spec juxtaposes the term password with the alternative of passcode and token. Password or passcode and token. Password or passcode and token. You can see that column 5, line 10, column 5, line 18, column 6, line 45, 55, 60. And so over and over again, there's this consistent, repeated juxtaposition between what is a password and what is a passcode and token. As if they're two different things and not the same thing. Your Honor, Dynapass reads the patent as discussing those two concepts or sets of terms as being equivalent. There's no doubt that Your Honor's references to the patent are correct. That's column 5, column 6, I see it. It's a discussion that references to us equivalence. I'd like to move on to a couple of things from the record. Well, let me say this. Under our reading of the patent, passcode and token are combined in the ways that matter under the claim structure. They are combined into the same authentication decision. And the alternative embodiment access is activated only when both the passcode and the token have been received and verified together. Neither alone suffices. The authentication outcome is the product of both elements of the password. But they both have to have been received before the password is generated. The claim requires it. Password is generated on the basis of those two items. They both have to have been received prior to the generation of the password. Well, a request for the token has to be received first. And then the password is generated on the computer network, and it's set. And then the token is transmitted to the user, and then the user inputs the password later. Generating a new password for said first secure computer network based at least upon the token and a passcode. Yes, that's the computer system in a previous step receives the request from the user for a token. The computer system then generates the new password based at least upon the token and the passcode. And then later, the token is transmitted to the user. And in a later step, the computer system receives back from the user the password. I guess I'm really kind of baffled. I don't see how that language doesn't preclude coverage of the second embodiment. I understand the concern, Your Honor. I mean, the language is clear on his face. That's what you all chose. You disclosed three embodiments. You chose only claim two of them in this claim. The language of the claim dictates the outcome. The language of claim two clearly requires a concatenation. The language of claim one in our reading does not require a combination in a single message. Bank of America 10 times in their brief says a single string. That's not in the patent. Simultaneous is not in the patent. At the same time, it's not in the patent. Yeah, but both of them have to be before the password is generated. That's what the claim requires because they're both used to generate the password. Just like Mike dropped her out. If there are any further questions, I'll be happy to address them. Okay. We'll take the rest of your time to move on. Thank you. Counsel, how do I say your name? Emerick Rage-Plessis, Your Honor. Mr. Rage-Plessis, please proceed. Thank you. Good morning, Your Honors, and may it please the Court. Both the plain language of the claims and the specification make clear that receiving the passcode and token separately does not satisfy the step of receiving the password. I mean, there is a second embodiment in this claim that the construction you seek is excluding. That's correct, Your Honor. Although I wouldn't put it so much as excluding. I think the claim language simply doesn't cover it on its face. And so we're not asking for some type of disclaimer or disavowal of what would otherwise be within the scope of the language. It feels like a breakup where you're saying it's you, not me. Well, Your Honor, I do agree that the construction. It's me. Your Honor, I agree that the claim language excludes that embodiment and that the construction excludes that embodiment. And we submit that that's correct, both based on the plain language of the claim and the specification itself. So the claim language requires generating a new password, setting that password for the user, and then receiving the same password that has been generated and then set from the user. And that password that's been generated and set is a distinct claim element from the passcode and the token, which appear in other claim limitations but not in the receiving step. So when the claims recite receiving the password from the user, that's exactly what they mean. The system has to receive the password from the user and not the separate components from which the password was originally generated. And the specification is consistent with that. We agree there is another embodiment. To be clear, we've never disputed that, and we talked about that embodiment at the Markman hearing. So it's not claimed in this claim? It is not claimed in this claim, Your Honor. I agree. Well, the specification, and I think there were some questions about this by Judge Bassoon, and then Judge Chen walked through some embodiments. Every time that embodiment is referenced, it's disclosed and distinguished as an alternative to using a password repeatedly. In Column 4, it says that in the preferred embodiment, the user combines the token with the passcode to form a password. That's the claimed embodiment. The claimed embodiment uses and refers to a password. And then right below that, it says in an alternative embodiment, the passcode and token are submitted separately. So even Column 4, which is Dynapass's main support, tells us explicitly that submitting from the user the passcode and token separately is an alternative to submitting a password. So it is an alternative embodiment that they could have claimed. They could have perhaps written claims to that embodiment. The patentee chose not to. The patentee chose to recite receiving the password from the user, and that on its face of the plain language excludes the second unclaimed embodiment that's described in the patent alternative. Let's assume that the specification makes clear that it's an equivalent interchangeable embodiment with an actual password. Could they rely on doctrine of equivalency? So Dynapass has conceded they can't rely on doctrine of equivalence because they've agreed to a final judgment of non-infringement based upon the court's construction. And so Dynapass conceives, in fact, at page 16 of the blue brief, they say their theory is that Bank of America is sending them at separate times. In other words, or that the user is sending them at separate times in Bank of America's login system. And the claim construction precludes that. And they've now agreed to a final judgment that they cannot meet their burden of proving infringement literally or under the doctrine of equivalence based upon that claim construction. So doctrine of equivalence is out. There's no dispute that under this claim construction by the district court, there is no infringement theory that would work. And in fact, I think those embodiments that are discussed in the specification would count against the doctrine of equivalence. Because under the disclosure dedication rule, that would mean that they could have claimed those embodiments and yet chose not to. And yet they couldn't turn around and say, well, this is now an equivalent that we could say is an alternative to the literal claim. Because that would have to be something that was not dedicated to the public in the specification. So if there are no further questions from the court, we would ask the court to affirm the claim construction and the judgment of non-infringement. OK, thank you, counsel. Thank you, your honors. Mr. Williams, you have some rebuttal time. Thank you, your honors. I'm still thinking about the cheese sandwich analogy. It reminds me of an experience with my son recently. He broke his tablet at school. And the school charged us $300 to replace it, which I thought was a reasonable price. And so I made a deal with my son that he would pay me back the $300. He's 10. And he did so over time. He provided some work and he provided some payments. And at the end of the day, combined, although they came in in installments, I received the set amount. I received $300. It's the same way that the passcode and the token. What's his billing rate? He's got a high rate on shoe shines. He just doesn't like to do the shoe shines. He prefers other chores. But it's a very reasonable rate, anyway, compared to us. Your honors, I- Compared to you? I'd probably bill at his rate. You might be surprised, your honor. Nothing further unless the court has questions. Thank you. Counsel, this case is taken under submission.